DR.LAKSHMI ARUNACHALAM

222 Stanford Avenue, Menlo Park, CA 94025

TEL: (650) 690-0995

FAX: (650) 854-3393

Email: laks22002@yahoo.com

*Pro Se* Plaintiff

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DR. LAKSHMI ARUNACHALAM, | Case No.:15-cv-00024-EDL |
| Plaintiff, | **PLAINTIFF'S OPPOSITION TO DEFENDANTS'S MOTION TO DISMISS** |
| v. | **DATE: 04/28/2015** |
| FREMONT BANCORPORATION, AND | **TIME: 2:00 p.m.** |
| FREMONT BANK, | **COURTROOM: E, 15th floor** |
| Defendants | **JUDGE: Hon. Elizabeth D. Laporte** |

COMES NOW the Plaintiff, Dr. Lakshmi Arunachalam ("Dr. Arunachalam"), *pro se*, hereby files this Opposition to Defendants' Motion to Dismiss.

**MATERIAL FACTS IN DISPUTE:** Plaintiff Dr. Arunachalam certifies that there are genuine issues of material fact in dispute that preclude granting Defendants' Motion to Dismiss under the standards set forth in FRCP. Therefore, the Motion should be denied. Dr. Arunachalam identifies the disputed facts that Defendants rely upon in their Motion and memorandum.

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

**MATERIAL FACTS IN DISPUTE**……………………………………………..…i

**STATEMENT OF FACTS AND ARGUMENTS** ...................................................4

**COUNTERSTATEMENT OF DISPUTED MATERIAL FACTS**………………………..4

**CONCLUSION** ........................................................................................18

**PROPOSED ORDER** …………………………………………………19

**DECLARATION OF DR. ARUNACHALAM**………………………………………20

CERTIFICATE OF SERVICE………………………………………………22

# TABLE OF AUTHORITIES

*Teleflex v. KSR* 119 Fed. Appx.
   282, 285 (Fed. Cir. 2005)...............................................................................4

*Amer. Hoist & Derrick v. Sowa*,
   725 F.2d 1350, 1358-1360 (Fed. Cir. 1984) ...............................................4

*Candela Laser v. Cynosure*, 862 F.Supp.
   632,639 (D. Mass. 1994)..............................................................................4

*Dickenson v. Zurko*,
   527 U.S. 150 (1999) 293 U.S. at  7..............................................................5

*Austin Machinery Co. v. Buckeye Traction Ditcher Co*. (C.C.A.)
   13 F.(2d) 697, 700. 293 U.S. at 7-8 ............................................................5

*BlonderTongue Laboratories, Inc. v. University of Illinois Foundation*
   402 U.S. 313, 333 (1971).........................................................................6,17

*Ohio Willow Wood Co. v. Alps S.,* LLC,
   735 F.3d 1333, 1342, 2013 BL 316646, 108 U.S.P.Q.2d 1745
   (Fed. Cir. 2013) (87 PTCJ 171, 11/22/13) ..................................................6

*Research in Motion Corp. v. WiLan USA Inc.,*
   IPR2013-00126, Paper No. 10, at 13 (PTAB June 20, 2013).......................6

Restatement of the Law 2d – Judgments. §§29, 28 ............................................17,18

*Triplett* v. *Lowell,*
   297 U. S. 638 1936) ....................................................................................18

*Mississippi Chem,* v. *Swift Agricultural Chem. Corp*.,
   717 F.2d 1374 (Fed. Cir. 1983).................................................................18

*State Farm Mut.  Auto. Ins. Co. v. LogistiCare Solutions, LLC*, 751 F.3d 684, 689 (5th Cir. 2014)

   (quoting *United States v. Shanbaum*, 10 F.3d 305, 311 (5th Cir. 1994)........................18

# TABLE OF STATUTES

(Pub. L. No. 94-593, 66 Stat. 792.  35 U.S.C. § 282) ..............................................4

## STATEMENT OF FACTS AND ARGUMENTS

1. Dr. Arunachalam reserves the right to later dispute any and all material facts identified by Defendants not specifically addressed herein.

2. In federal district court, a patent carries a presumption of validity. Defendants, as the challenger, have failed to show by clear and convincing evidence that the '339 patent is invalid.

3. **COUNTERSTATEMENT OF DISPUTED MATERIAL FACTS**:

4. Defendants state: "Invalidity of the '339 patent was already decided in *JPMorgan*."  Doc. 25 at 12. This fact is **DISPUTED**. The 8,271,339 ("'339") patent is valid. Defendants' assertion has no foundation in fact or the law. Defendants contradict themselves in the very next paragraph at Doc. 25 at 12 that "…the patents invalidated in *JPMorgan* do not include the '339 patent…" They, in essence, agree that the '339 patent is not invalid. It has not been proven invalid by any court. Defendants have not met the burden of proof by clear and convincing evidence, the current standard of proof necessary to invalidate an issued patent. In *Teleflex v. KSR* 119 Fed. Appx. 282, 285 (Fed. Cir. 2005), the Federal Circuit remanded, as KSR "must prove by clear and convincing evidence that each claim that is challenged cannot reasonably be held to be non-obvious."

   The statutory requirement is: "A patent is presumed valid. The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity." (Pub. L. No. 94-593, 66 Stat. 792.  35 U.S.C. § 282). The permanent burden is imposed upon the challenger of a patent. *Amer. Hoist & Derrick v. Sowa*, 725 F.2d 1350, 1358-1360 (Fed. Cir. 1984). Judge Rich, a principal author of the Patent Act of 1952, stated: "In addition to the presumption of validity, a presumption of administrative correctness attaches to the

decision by the PTO to issue a patent." *Candela Laser v. Cynosure*, 862 F.Supp. 632,639 (D. Mass. 1994). "The presumption of administrative correctness requires heightened deference to the fact finding of the examiner, as stated in the prosecution history of the patent application." *Dickenson v. Zurko*, 527 U.S. 150 (1999): "A patent regularly issued…is presumed to be valid until the presumption has been overcome by convincing evidence of error." *Res judicata* and the language of the patent statute failed to impose the outcome of previous decisions among parties under a different name. The judgments in the suits between Pi-Net and J.P. Morgan Chase & Co. and their respective assignees are not conclusive upon Defendants—strangers to the record. This is so by force of the accepted limitations of the doctrine of *res judicata*. 293 U.S. at 7. The presumption of the validity of the patent is such that the defense of the challenger, Defendants, must be established by the clearest proof— perhaps beyond reasonable doubt. *Austin Machinery Co. v. Buckeye Traction Ditcher Co.* (C.C.A.) 13 F.(2d) 697, 700. 293 U.S. at 7-8.

Defendants, who are infringers, assail the validity of the '339 patent fair upon its face and bear a heavy burden of persuasion, and fail to show evidence that has more than a dubious preponderance. 293 U.S. at 8. Defendants have failed to show proof that is clear, satisfactory, and beyond a reasonable doubt. The '339 patent has not been adjudicated at all for validity and has not yet been subject to repeated review in both administrative and judicial forums, the patent should not be stricken down except upon very clear and convincing proof of invalidity. The statutory presumption of validity must prevail. Reasonable doubt on the issue of validity must be resolved in favor of the patent holder. The strict standard of proof is necessary when unusual factual circumstances, by their very nature, require it.

As the Supreme Court held in *BlonderTongue Laboratories, Inc. v. University of Illinois Foundation*, collateral estoppel only applies, as long as the plaintiff had a full and fair opportunity to litigate the validity of its patent. The validity of the '339 patent has not yet been litigated. The JPMorgan case addressed the '500, '492 and '158 patents, <u>not the '339 patent</u>. Neither Pi-Net nor Dr. Arunachalam had a full and fair opportunity to litigate the validity of the '500, '492 and '158 patents, let alone the '339 patent, with a rogue former attorney, the subject of an ongoing malpractice lawsuit. (CV-14-5051 in N. Dt of CA).

Collateral estoppel is one of two species of *res judicata*. The other species of *res judicata* is claim preclusion, which estops a party from re-litigating a legal claim that was already, or could have reasonably been, litigated against ***the same party***. Collateral estoppel is generally regarded as a procedural issue and is therefore governed by regional circuit law <u>except as to those aspects of the determination that involve substantive issues of patent law, which are governed by Federal Circuit law</u>. See *Ohio Willow Wood Co. v. Alps S., LLC*, 735 F.3d 1333, 1342, 2013 BL 316646, 108 U.S.P.Q.2d 1745 (Fed. Cir. 2013) (87 PTCJ 171, 11/22/13)

5. Even the PTO does not hold preclusive a district court's non-final holding of claim invalidity or unenforceability, because such a judgment lacks finality for purposes of collateral estoppel. *In Research in Motion Corp. v. WiLan USA Inc*., IPR2013-00126, Paper No. 10, at 13 (PTAB June 20, 2013) (''[T]he Board may itself interpret a claim term as a matter of law notwithstanding what is or is not argued by a party. The Board's conclusion is not subject to any restriction based on a party's contentions in another proceeding or even this proceeding.'') Pi-Net did ***not*** admit that the '339 patent is invalid. The '339 patent has never been adjudicated previously for invalidity.

6.  Defendants state: "...because an identity of litigated issues exists between the Related Patents and the '339 patent...the issues decided in *JPMorgan* is identical to the issues to be litigated here because they involve the same claim terms and the same specification." This fact is **DISPUTED**.

Defendants have no basis for stating that the issues are identical, they <u>fail to list the issues that are identical</u>, they simply make a conclusory statement with <u>no basis in fact or the law</u>: "...because they involve the same claim terms and the same specification." <u>PTO guidelines state and case law abounds that a claim term is not stand alone and does not exist in a vacuum, but it may only be interpreted as part of a whole claim</u>. Indeed, the law requires rigid examination before fact-finders before a claim can be proven to be invalid. Simply saying it is invalid, as Defendants have done here, is woefully inadequate. It is not proof.

**The '339 claims are entirely different from the claims of the '500, '492 and '158 patents**. For example, the <u>'500 patent recites means plus function claims</u>, for example, '500 claim 1 recites "A configurable value-added network switch for enabling real-time transactions on a network," comprising: "means for switching to a transactional application in response to a user specification from a network application, said transactional application providing a user with a plurality of transactional services managed by at least one value-added network service provider, said value-added network service provider keeping a transaction flow captive, said plurality of transactional services being performed interactively and in real time; means for transmitting a transaction request from said transactional application; and means for processing said transaction request."

'500 claim 3 recites: "The configurable value-added network switch as claimed in claim 2 wherein said means for activating said transactional application further includes means for

creating a transaction link between said network application and said transactional

application."

'500 claim 5 recites: "The configurable value-added network switch as claimed in claim

1 wherein said means for processing said transaction request further comprises means for

coupling said means for transmitting to a host means."

Claim 8 recites: "The configurable value-added network switch as claimed in claim 1

further comprising means for controlling and prioritizing multiple transaction requests

initiated by various users."

Claim 9 recites: "The configurable value-added network switch as claimed in claim 1

further comprising means for providing security management, fault management,

configuration management, performance management and billing management."

7.  The very title of the '492 patent is "Web application network portal" and recites claims that

clearly claim "the VAN switch is an application layer switch in the application layer of the

OSI model," as disclosed and taught in the patent specification at columns 4, 5, 7, 8 and 9 of

the patent specification, completely enabled, not indefinite and not lacking written

description.

'492 claim 5 recites: "The system of claim 1, wherein each Web application of the one or

more Web applications is a value-added network (VAN) service or online service atop the

Web, utilizing the VAN switch," completely enabled, not indefinite and does not lack written

description. It appears Defendants have not even read column 9 of the patent specification

where this is clearly disclosed and taught.

Defendants fail to note that '492 claim 8 recites: "The system of claim 1, further

comprising:  a computer system executing a back-end transactional application for

processing the transaction request in real-time, wherein said computer system includes a data repository, wherein the data repository is a data repository to store banking data, and wherein retrieving data includes retrieving banking data to complete a real-time Web banking transaction as one of the real-time Web transactions from a banking Web application as one of the one or more Web applications."

'492 claim 12 recites "…service providers…who have agreed to cooperate to provide value-added network (VAN) services atop the Web for access by employees of the business entity…point-of-service employee Web applications on a Web page offered by the business entity that operates the portal…service network including a VAN switch…," all of which claim elements are definite, enabled and abound in written description in columns 9, 7, 6, 5, 4 of the patent specification, the very title of the patent and in the diagrams.

8. The '158 patent claim 1 recites: "…the point-of-service application provides access to both a checking and savings account…transferring funds from the checking account to the savings account in real-time utilizing a routed transactional data structure that is both complete and non-deferred, in addition to being specific to the point-of-service application, the routing occurring in response to the subsequent signals."

'158 claim 2 recites: "The method of claim 1, wherein an exchange over the Web is used to complete the transfer of funds in a Web application."

'158 claims 4 and 5 recite: "…wherein object routing is used to complete the transfer of funds in a Web application…the object routing includes the use of a distributed on-line service information bases."

'158 claims 6 and 7 recite: "…a virtual information store is used to complete the transfer of funds…includes a networked object specific to a Web application in a Web transaction."

'158 claim 8 recites: "…the networked object is the object identity in a Web transaction connecting from a Web application on a Web page to a transactional application executing anywhere across the Web."

'158 claims 9, 10 and 11  recite: "the Web transaction is a loan requested from a lender across the Web from a Web application…a vehicle purchased with bank financing across the Web from a Web application…accessing an account across the Web from a Web application."

9. Whereas the '339 patent claim 5 recites: "…wherein **said Point-of-Service application is a banking application that operates to connect to a financial institution over the Web**."

'339 claims 4 and 6 recite: "…wherein said Point-of-Service application allows a user to buy or sell over the Web… playing or billing over the Web."

'339 claim 3 recites: "…wherein said Point-of-Service application connects to the on-line service in real-time to provide inter-merchant services or intra-merchant services over the Web."

 '339 claim 11 recites: "**The system for delivering Point-of-Service applications to a multi-media device over the World Wide Web of claim 7**…"

Claim 12 recites: "…said Web application including at least one <u>object comprising information entries and attributes</u>, wherein the object exposes one or more objects of a line of Web applications to the user ..."

10. Defendants **<u>admit</u>** that the issues are yet "to be litigated here" in the '339 patent.   The issues decided in *JPMorgan* are **<u>not</u>** "identical to the issues to be litigated here," as shown herein. The '339 patent claims and claim terms taken in the context of the whole claim in the '339 patent are **_<u>entirely different</u>_** from the means plus function claims of the '500 patent.

The '339 <u>patent claims and claim terms taken in the context of the whole claim</u> in the '339 patent are not identical to the '492 patent claims which recite "each Web application is a value-added network (VAN) service or online service atop the Web, utilizing the VAN switch." "a Web application network portal," "point-of-service Web applications corresponding to the Web merchant services from the point-of-service application list on the Web page," "distributed control," "computer system includes a data repository, wherein the data repository is a **data repository to store banking data, and wherein retrieving data includes retrieving banking data to complete a real-time Web banking transaction as one of the real-time Web transactions from a banking Web application**," "point-of-service employee Web applications," "portal offers the one or more point-of-service applications as on-line services on the Web page."

The '339 patent claims and claim terms taken in the context of the whole claim in the '339 patent are **_not identical_** to the '158  patent claims which recite " The '158 patent claims "A method for performing **a real time Web transaction from a Web application over a digital network atop the Web**… the point-of-service application provides access to both a checking and savings account… transferring funds from the checking account to the savings account in real-time," "wherein object routing is used to complete the transfer of funds in a Web application," "object routing includes the use of a distributed on-line service information base," "a virtual information store is used to complete the transfer of funds," "the virtual information store includes a networked object specific to a Web application in a Web transaction," "the networked object is the object identity in a Web transaction connecting from a Web application on a Web page to a transactional application executing anywhere across the Web, " "the Web transaction is a loan requested from a lender across the Web

from a Web application," "wherein the Web transaction is accessing an account across the Web from a Web application."

11. The '339 patent claims have yet to be adjudicated, as Defendants admit in Doc. 25 at 12. The '339 patent claims "**Point-of-Service application is a banking application that operates to connect to a financial institution over the Web**," "…said Point-of-Service application allows a user to buy or sell over the Web,… playing or billing over the Web," "…Point-of-Service application connects to … inter-merchant services or intra-merchant services over the Web," "…said <u>Web application including at least one object comprising information entries and attributes</u>, wherein the object exposes one or more objects of a line of Web applications to the user …"

Even if what Defendants allege is true, which it is not, **<u>the term "service network" does not appear in independent claim 7 or dependent claims 8-11 of the '339 patent</u>**. In any event, <u>a claim term may not be stripped from its whole context of the whole claim</u>. Likewise, the <u>term "point-of-service application" may not be stripped from the context of the whole claim. And the claims of the '339 patent are not the same as the claims of the '492, '500 and '158 patent</u>.

12. Defendants state: "…the '339 patent is related to U.S. Patent Nos. 5,987,500, 8,037,158, and 8,108,492 (collectively, "Related Patents")... Similar to the '339 patent, the Related Patents claim systems and methods for online transactions." This fact is **DISPUTED**. Defendants characterize the '492, '500 and '158 patents litigated in *JP Morgan* as "Related Patents." Other than that these patents and the '339 patent derive a common priority date from the same provisional application with S/N 60/006,634, the patents are not related, the claims are different. That the patents share a common specification is irrelevant to whether there is issue

preclusion or claim preclusion or res judicata or collateral estoppel or whether the '339 patent is invalid.

13. Defendants state: "…an abstract concept of real-time transactions, in which a merchant and a user interact…the term "point-of-service application," the court concluded that the term was not enabled because the "specification…does not describe, how to make or use point-of-service applications and transactional applications . . . or back-end transactional applications. . ."…The inventor coined the terms "VAN switch" and "point-of-service application" but fails to provide sufficient description for those terms in the specification for one of ordinary skill in the art to implement these terms…but offers no further description of any of the requests for service available to a user…" Doc 25 at 9.  This fact is **DISPUTED**. Judge Robinson in *JP Morgan* construed the term "Point-of-Service application," did not rule that this term was indefinite. Judge Robinson construed "Value-added network service provider" as a "provider of a value-added network service," and a value-added network service in column 9 of the patent is specified as a point-of-service application. Defendants have incorrectly extrapolated what Judge Robinson ruled in JP Morgan. Defendants appear not to have read columns 4, 5, 6, 7, 8, 9 of the patent specification. They have no foundation in fact or the law to state that "VAN switch" and "point-of-service application," terms coined by the inventor, are not specified for one of ordinary skill in the art to implement them.

14. Defendants state: "Plaintiff has filed suit in this Court for claims containing the same terms as discussed above, alleging infringement of a patent likewise invalid due to the same fatal defects." This fact is **DISPUTED**.  <u>Claim terms are not interpreted in a vacuum but only in the context of a whole claim</u>. Defendants are infringers and are abusing the judicial process in filing this Motion to Dismiss not based on fact or the law, and without even reading the

patent specification and making frivolous extrapolations to conclusory statements with no

basis.

15. Defendants state: "In *Pi-Net Int'l Inc. v. Fulton Fin. Corp.*, No. 14-490 (D. Del.), Judge

Andrews granted defendant's motion to dismiss…, including under the '339 patent, based on

collateral estoppel…Accordingly, one court has already ruled against Plaintiff on the same

issue raised by this motion." Doc 25 at 9. This fact is **DISPUTED**. The '339 was not

estopped by *JPMorgan*. Judge Andrews did not rule that the '339 patent was invalid nor that

collateral estoppel applied to the '339 patent. The *Fulton* court did not rule against Plaintiff

on the "same issue raised by this motion." As discussed above, there is no identity of issues,

nor are the claims or issues identical.

16. Defendants make conclusory allegations that "Plaintiff's Complaint should be dismissed for

failure to state a claim under Rule 12(b)(6) because Plaintiff's claims are barred by the

doctrine of collateral estoppel …" This fact is **DISPUTED**.  Defendants "make a legal

conclusion couched as factual allegation."

17. Defendants allege that the '339 patent is invalid and that there is an identity of issues and that

"the differences between the unadjudicated patent claims and the adjudicated patent claims

do not materially alter the question of invalidity," and therefore that "collateral estoppel

applies…" Doc 25 at 11. This fact is **DISPUTED**.

     Plaintiff has shown in detail above how the issues are not identical between the '492,

'500, 158 patents with the '339 patent. There is no issue preclusion nor claim preclusion. The

differences between the unadjudicated patent claims and the adjudicated patent claims would

materially alter the question of invalidity in the case of the '339 patent from the '492, '500,

158 patents. As shown above, there is no identity of issues, nor litigated issues between the '339 patent and the '492, '500, 158 patents.

18. Defendants illogically extrapolate *Ohio Willow Wood Co.*, and incorrectly conclude that "collateral estoppel applies where similar claim terms in a related patent have been litigated." Doc 25 at 12. To the contrary, Federal Circuit stated: "Our precedent does not limit collateral estoppel to patent claims that are identical. Rather, <u>it is the identity of the *issues* that were litigated that determines whether collateral estoppel should apply</u>. .. . If the differences between the unadjudicated patent claims and the adjudicated patent clams do not materially alter the question of invalidity, collateral estoppel applies." The patent claims as well as issues are different, there is no identity of issues. The issues in the '339 patent have not been adjudicated yet, as Defendants admit, and were not decided in the *JP Morgan* case on '492, '500, 158 patents, nor are they identical to the issues.

19. Defendants state: "Plaintiff herself, or through her companies Pi-Net International, Inc. ("Pi-Net"), and WebXchange, has filed suit against over 20 defendants in various districts asserting infringement of the '339 patent…" Doc 25 at 8. This fact is **DISPUTED**. Only **<u>one</u>** complaint was ever filed by Plaintiff's former counsel on the '339 patent, namely*, Fulton*, and the '339 patent was never adjudicated.

20. In order for collateral estoppel to apply, four factors must be met: (1) The issues in the second suit are the same as in the first suit; (2) The issues in the first suit must have been actually litigated; (3) The issues in the first suit must have been actually decided; (4) The issues must have been necessary to the court's judgment. Also, there must be no special circumstance that would render preclusion inappropriate or unfair.

21. For *res judicata* to be binding, several factors must be met: (1) identity in the thing at suit; (2) identity of the cause at suit; (3) identity of the parties to the action; (5) identity in the designation of the parties involved; (5) whether the judgment was final; (6) whether the parties were given full and fair opportunity to be heard on the issue. Plaintiff was not afforded all procedural opportunities and was not given a full and fair opportunity to litigate. Claim preclusion, estops a party from re-litigating a legal claim that was already, or could have reasonably been, litigated <u>against the same party</u>. The estoppel provision does not estop unrelated third parties involved in district court litigation involving <u>the same patents</u>. Defendants do not even begin to meet this burden.

22. Collateral estoppel cases raise constitutional <u>due process</u> problems, particularly when it is applied to a party that did not participate in the original suit. Every disputant is entitled to a day in court and cannot ordinarily be bound by the negative result of another disputant's suit, even if that other disputant had exactly the same legal and factual arguments. <u>Due process concerns also can arise even when a party did have a day in court to dispute an issue.</u> For example, a party may have not effectively litigated an issue decided against the party in an earlier suit because the damages were too small, so it may be unjust to bar the party from re-litigating the issue in a trial for much greater damages. Exceptions to *res judicata* based on procedural and jurisdictional issues, **based not on the wisdom of the earlier court's decision but its authority or on the competence of the earlier court to issue that decision,** allow a party to attack the validity of the original judgment, even outside of appeals. In matters involving <u>due process</u>, **cases that appear to be *res judicata* may be re-litigated.** <u>A judgment of invalidity will not have a preclusive effect if a patentee can demonstrate that it did not have a full and fair opportunity to litigate the issue.</u> Plaintiff's

former attorney engaged in rogue activities and SLAPP to cover his malpractice, which is now the subject of a malpractice lawsuit CV 14-5051 in the Northern District of California, now transferred to Delaware District court. *Blumcraft of Pittsburgh v. Kawneer Co.*, 482 F.2d 542, 546–47 (5th Cir. 1973); *see Blonder-Tongue*, 402 U.S. at 333 (a patentee "must be permitted to demonstrate, if he can, that he did not have 'a fair opportunity procedurally, substantively and evidentially to pursue his claim the first time.'" Restatement (Second) of Judgments § 28(5) (1982) (a party is not precluded where "the party sought to be precluded, as a result of the conduct of his adversary or **other special circumstances**, did not have an adequate opportunity or incentive to obtain a full and fair adjudication in the initial action.") Plaintiff was deprived of crucial evidence and witnesses in the first litigation and it would present additional evidence at a new trial. *See Blonder-Tongue*, 402 U.S. at 333. The exception to preclusion which applies where a party "could not, as a matter of law, have obtained review of the judgment in the initial action." Restatement (Second) of Judgments § 28(1). The patents did ***not*** use slightly different language to describe substantially the same invention. Plaintiff can file a motion due to insufficiency of the evidence as a ground for a new trial. Plaintiff identified significant new arguments that were not in fact raised in the earlier district court litigation.  Pi-Net had a rogue attorney, who did not advance Plaintiff's claim construction based on the patent specification, prosecution history and sound technical and patent legal judgment in *JPMorgan* nor statements based on fact or the law in *Fulton*.

23. Restatement of the Law 2d – Judgments. §29 considers non-mutual issue preclusion and indicates that "other circumstances [may] justify affording [a would-be precluded party] an opportunity to relitigate the issue. The circumstances to which considerations should be given include those enumerated in § 28 and also whether . . . (4) The determination relied on

as preclusive was itself inconsistent with another determination of the same issue." The notes following §29 **suggest two prior inconsistent outcomes "may have been based on equally reasonable resolutions of doubt as to the probative strength of the evidence or the appropriate application of a legal rule to the evidence**. That such a doubtful determination has been given effect in the action in which it was reached does not require that it be given effect against the party in litigation against another adversary." See *Triplett* v. *Lowell,* 297 U. S. 638 (1936).

24. In *Mississippi Chem*, v. *Swift Agricultural Chem. Corp*., 717 F.2d 1374 (Fed. Cir. 1983)  the Federal Circuit held that prior inconsistent judgments serve as a "red flag warning" for the court to more carefully consider whether the patentee had a full and fair opportunity to litigate the issue in the case that resulted a finding of invalidity, if the court adequately comprehended and applied the appropriate substantive standards. *State Farm Mut.  Auto. Ins. Co. v. LogistiCare Solutions, LLC*, 751 F.3d 684, 689 (5th Cir. 2014) (quoting *United States v. Shanbaum*, 10 F.3d 305, 311 (5th Cir. 1994)).

25. **CONCLUSION:** For at least the reasons noted above, Defendants' Motion to Dismiss should be denied.

Date: March 30, 2015          Respectfully submitted,
222 Stanford Avenue

Menlo Park, CA 94025
Tel: 650.690.0995              Dr. Lakshmi Arunachalam
laks22002@yahoo.com            Inventor, *Pro-Se* Plaintiff

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DR. LAKSHMI ARUNACHALAM,                )<br>                                                     )<br>                     Plaintiff,               )<br>                                                     )<br>                     v.                         )<br>                                                     )<br>FREMONT BANCORPORATION, AND  )<br>                                                     )<br>FREMONT BANK,                             )<br>                                                     )<br>                     Defendants              )<br>                                                     )<br>                                                     )<br>                                                     )<br>_____)| Case No.: CV 15-00023-EDL<br><br>**PLAINTIFF'S OPPOSITION TO**<br>**DEFENDANTS'S MOTION TO DISMISS**<br><br>**DATE: 04/28/2015**<br><br>**TIME: 2:00 p.m.**<br><br>**COURTROOM: E, 15th floor**<br><br>**JUDGE: Hon. Elizabeth D. Laporte** |

**ORDER**

      **NOW TO WIT,** this day of _____, 2015, Defendants' Motion to Dismiss be denied.

**IT IS SO ORDERED.**

_____<br>Judge

DR.LAKSHMI ARUNACHALAM
222 Stanford Avenue, Menlo Park, CA 94025

TEL: (650) 690-0995

FAX: (650) 854-3393

Email: laks22002@yahoo.com

*Pro Se* Plaintiff

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DR. LAKSHMI ARUNACHALAM, | Case No.: CV 15-00023-EDL |
| Plaintiff, | **PLAINTIFF'S OPPOSITION TO DEFENDANTS'S MOTION TO DISMISS** |
| vs. | **DATE: 04/28/2015** |
| FREMONT BANCORPORATION, AND | **TIME: 2:00 p.m.** |
| FREMONT BANK, | **COURTROOM: E, 15th floor** |
| Defendants | **JUDGE: Hon. Elizabeth D. Laporte** |

## DR. ARUNACHALAM's DECLARATION IN SUPPORT OF OPPOSITION TO MOTION TO DISMISS BY DEFENDANTS

I, Dr. Lakshmi Arunachalam, declare:

1. I am an individual residing at 222 Stanford Avenue, Menlo Park, CA 94025. I am a citizen of California and of the U.S.A.

2. I am the inventor and assignee of the patents-in-suit.

3.  I submit this declaration in support of Plaintiff's Opposition to Motion to Dismiss filed by Defendants.

4.   I have personal knowledge of the information set forth herein, all of which is true and correct of my own personal knowledge, and if called upon to testify, I could and would competently testify thereto.

5.  I declare under penalty of perjury under the laws of the United States of America the foregoing is true and correct, and this declaration was executed on March 30, 2015.

Date: March  30, 2015

_Lakshmi Arunachalam_

_____

Dr. Lakshmi Arunachalam
222 Stanford Avenue
Menlo Park, CA 94025
650.690.0995
Laks22002@yahoo.com

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DR. LAKSHMI ARUNACHALAM, | Case No.: CV 15-00023-EDL |
| Plaintiff, | **PLAINTIFF'S OPPOSITION TO DEFENDANTS'S MOTION TO DISMISS** |
| vs. | **DATE: 04/28/2015** |
| FREMONT BANCORPORATION, AND | **TIME: 2:00 p.m.** |
| FREMONT BANK, | **COURTROOM: E, 15th floor** |
| Defendants | **JUDGE: Hon. Elizabeth D. Laporte** |

**CERTIFICATE OF SERVICE on Defendants**

I, Dr. Lakshmi Arunachalam, do hereby certify that on March 30, 2015, I served a copy of the foregoing via electronic mail and/or CM/ECF system to counsel of record Carmen Wong and Ramsey Al Salam, for Defendants of the attached "PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS," DR. ARUNACHALAM's DECLARATION IN SUPPORT THEREOF, and the proposed ORDER.

*Lakshmi Arunachalam*

DATED:  March 30, 2015                         Dr. Lakshmi Arunachalam